**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| True Center Gate Leasing, Inc., an Arizona corporation,<br><br>        Plaintiff,<br><br>vs.<br><br>Sonoran Gate, L.L.C., an Arizona limited liability company; K-Zell Metals, Inc., an Arizona corporation; Donald Kammerzell and Barbara Kammerzell, husband and wife; and Mike O'Connor, an individual,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. CV-02-1109-PHX-DGC<br><br>**ORDER** |

      In the only claims remaining in this case, Plaintiff True Center Gate Leasing, Inc. ("True Center") seeks a declaratory judgment that two patents held by Defendant K-Zell Metals, Inc. ("K-Zell") are invalid. K-Zell recently has covenanted not to sue True Center or its customers for infringement of the two patents based on past or present acts or products. The Court concludes that this covenant eliminates the case or controversy required for jurisdiction over the declaratory judgment claims and therefore will dismiss this action.

**I.    Background.**

      True Center and K-Zell make starting gates for horse racing tracks. True Center has been in the business for several decades. K-Zell acted as a contractor for True Center for several years, fabricating parts for and sometimes assembling True Center starting gates.

1  K-Zell subsequently began manufacturing starting gates on its own.

2  On June 14, 2002, True Center filed this action against K-Zell and additional defendants asserting claims for false advertising, trademark dilution and infringement, breach of fiduciary duty, conspiracy, breach of contract, violation of the trade secrets act, slander, and conversion. Doc. #1. Each of these claims and all defendants other than K-Zell have been eliminated from this case by summary judgment. Doc. #139.

After the lawsuit was filed, K-Zell obtained two patents from the United States Patent and Trademark Office ("PTO") – Patent No. 6,508,201 ("201 patent") and No. 6,637,094 ("094 patent"). True Center thereafter amended its complaint to assert two claims for declaratory judgment, one seeking a declaration that the 201 patent is invalid and the other seeking a declaration that the 094 patent is invalid. Docs. ##57, 70. True Center alleges that the patents embody prior art created and used for years by True Center in the manufacture of horse race starting gates and that K-Zell engaged in inequitable conduct before the PTO when it failed to disclose this prior art while seeking the patents.

K-Zell argued during pre-trial litigation of this case that the Court did not have jurisdiction over the patent validity claims because there was no actual controversy between True Center and K-Zell concerning the patents. The Court rejected this argument, holding that True Center had adequately alleged and presented sufficient evidence that K-Zell threatened True Center with claims of patent infringement. Docs. ##56, 139. The Court accordingly denied K-Zell's requests that the declaratory judgment claims be dismissed. *Id.*

A bench trial on patent validity began on November 1, 2005. Shortly before trial, K-Zell stated in filings to the Court and on the record during a final pretrial conference that it was covenanting not to sue True Center or its customers for infringement of the 201 and 094 patents arising out of any products or acts existing on or before November 1, 2005. K-Zell argued that this covenant eliminated any actual controversy between the parties and therefore required dismissal of the declaratory judgment claims for lack of jurisdiction. The Court heard oral argument on this issue on the morning of the first day of trial and

1 took the matter under advisement. Each of the parties had provided briefing on these
2 jurisdictional matters. Docs. ##178, 181-83. Following additional analysis and at the start
3 of the second day of trial, the Court held that the covenant not to sue did eliminate the
4 required case or controversy and that dismissal of the action was therefore required. This
5 order sets forth the Court's rationale.

6 **II.    Analysis.**

7 The United States Constitution provides that federal courts have jurisdiction only
8 over actual cases or controversies. U.S. Const. art. III, § 2, cl. 2; *see Anderson v. United*
9 *States*, 344 F.3d 1343, 1349 (Fed. Cir. 2003) ("Article III, section 2 of the United States
10 Constitution limits federal judicial power to the resolution of actual 'cases' or
11 'controversies.'"). Moreover, Congress has made clear that federal declaratory judgment
12 jurisdiction extends only to an "actual controversy" between interested parties. 28 U.S.C.
13 § 2201(a); *see Gen-Probe, Inc. v. Vysis, Inc.*, 359 F.3d 1376, 1379 (Fed. Cir. 2004) ("The
14 Declaratory Judgment Act only supports jurisdiction in the event of an 'actual
15 controversy.' This requirement effectuates Article III of the Constitution, which only
16 authorizes the federal judiciary to hear justiciable cases and controversies.") (citations
17 omitted); *Medimmune, Inc. v. Centocor, Inc.*, 409 F.3d 1376, 1378-79 (Fed. Cir. 2005)
18 ("Paralleling Article III of the Constitution, the [Declaratory Judgment] Act 'requires an
19 actual controversy between the parties before a federal court may exercise jurisdiction over
20 an action for declaratory judgment.'") (quoting *Teva Pharms. USA, Inc. v. Pfizer, Inc.*,
21 395 F.3d 1324, 1331 (Fed. Cir. 2005)). Thus, "[t]he existence of a sufficiently concrete
22 dispute between the parties remains . . . a jurisdictional predicate to the vitality of" a
23 declaratory judgment case. *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d
24 1054, 1058 (Fed. Cir. 1995). "[T]he 'actual controversy must be extant at all stages of
25 review, not merely at the time the complaint is filed.'" *Id.* (quoting *Preiser v. Newkirk*, 422
26 U.S. 395, 401 (1975)). As the party seeking declaratory relief, True Center must "'establish
27 that jurisdiction over its declaratory judgment action existed at, and has continued since,
28 the [declaratory judgment claims were] filed.'" *Id.* (quoting *Int'l Med. Prosthetics Res.*

1 *Assocs. v. Gore Enter. Holdings, Inc.*, 787 F.2d 572, 575 (Fed. Cir. 1986)).

2       The Federal Circuit has recognized a two-part test for determining the justiciability
3 of a declaratory judgment claim concerning patent invalidity:

4     There must be both (1) an explicit threat or other action by the patentee,
    which creates a *reasonable* apprehension on behalf of the declaratory
5     plaintiff that it will face an infringement suit, and (2) *present* activity which
    could constitute infringement or concrete steps taken with the intent to
6     conduct such activity.

7 *Id.* (quoting *B.P. Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 978 (Fed. Cir. 1993))
8 (emphasis in original); *see Medimmune*, 409 F.3d at 1379 (stating that the two-part test
9 focuses on the conduct of both the patentee and the declaratory plaintiff "[t]o keep watch
10 over the subtle line between an 'abstract question' and 'a controversy contemplated by
11 the Declaratory Judgment Act'") (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S.
12 270, 273 (1941)). The Court must determine, therefore, whether K-Zell's covenant not to
13 sue eliminates one or both of these required grounds for jurisdiction.

14     **A.**    **The Covenant Not to Sue.**

15       The Court questioned K-Zell's counsel in some detail on the record on November
16 1, 2005. Counsel confirmed, with the president of K-Zell present, that K-Zell will not sue
17 True Center or its customers for infringement of the 201 or 094 patents arising out of any
18 past or present acts or products. K-Zell stated that this covenant applied to acts occurring
19 or products in existence on or before November 1, 2005.

20       The Federal Circuit has held that a patentee defending against an action for a
21 declaratory judgment of invalidity can divest the trial court of jurisdiction by implementing
22 such a covenant not to sue. *See Super Sack*, 57 F.3d at 1058-60. This is because the
23 covenant eliminates the first requirement of justiciability set forth above – that the
24 declaratory plaintiff have a reasonable apprehension that it will face an infringement suit.
25 *Id.* ("Because Chase can have no reasonable apprehension that it will face an infringement
26 suit on the '796 and '652 patents with respect to past and present products, it fails to
27 satisfy the first part of our two-part test of justiciability.").

28       The Federal Circuit recently has made clear that the declaratory plaintiff must have

1  not only a reasonable apprehension of an infringement suit, but of an "imminent"
2  infringement suit. *Teva Pharms.*, 395 F.3d at 1333 ("Teva must be able to demonstrate that
3  it has a reasonable apprehension of *imminent* suit.") (emphasis in original). "This
4  requirement of imminence reflects the Article III mandate that the injury in fact be
5  'concrete,' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Steelco*
6  *v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998)). K-Zell's covenant not to sue clearly
7  eliminates any reasonable apprehension True Center might have of an imminent
8  infringement suit. As a result, the first requirement of justiciability is not satisfied and this
9  Court lacks subject matter jurisdiction over True Center's declaratory judgment claims.

10  True Center argues that the covenant will not protect it from an infringement suit
11  based on the 201 and 094 patents arising out of future acts or products. True enough, but
12  the Federal Circuit has held that fear of such future litigation is not sufficient to invoke the
13  Court's declaratory judgment jurisdiction. This is because the second part of the test for
14  justiciability requires that the putative infringer's "*present* activity" place it at risk of
15  infringement liability. *Super Sack*, 57 F.3d at 1060 (emphasis in original). A lawsuit based
16  on future activity is, of course, not based on "present activity," and the fear of such a suit
17  therefore does not satisfy the second requirement. "The residual possibility of a future
18  infringement suit based on . . . future acts is simply too speculative a basis for jurisdiction
19  over [a claim] for declaratory judgments of invalidity." *Id.*

20  K-Zell's covenant not to sue thus eliminates both elements of the two-part test for
21  jurisdiction over True Center's declaratory judgment claims. As a result, "[t]he only proper
22  course for [this Court is] to dismiss the case for lack of jurisdiction." *Id.*

23  **B.  True Center's *Cardinal Chemical* Argument.**

24  True Center argues that this case is unique and not subject to the Federal Circuit
25  rule recognized in *Super Sack*. True Center emphasizes that K-Zell is a former contractor
26  for True Center, that the parties have a longstanding relationship, that True Center
27  developed and perfected the gate design now found in the 201 and 094 patents, and that
28  K-Zell wrongfully appropriated that design from the public domain and fraudulently

obtained the patents covering it. True Center further argues that the mere existence of the patents has a damaging effect on True Center, discouraging customers and contractors from doing business with True Center and imposing a cloud of possible infringement liability over all of True Center's business. True Center argues that the covenant not to sue does not eliminate this ongoing injury from K-Zell's fraudulently procured patents.

True Center has cited no authority directly supporting this argument. True Center relies primarily on a particular sentence in the Supreme Court's decision in *Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83 (1993): "Merely the desire to avoid the threat of a 'scarecrow patent' in Learned Hand's phrase, may therefore be sufficient to establish jurisdiction under the Declaratory Judgment Act." *Id.* at 96 (footnote omitted). True Center argues that K-Zell has two "scarecrow patents" that damage True Center's business.

The Court cannot accept True Center's broad reading of *Cardinal Chemical.* The Supreme Court held in that case that the Federal Circuit should not maintain a *per se* policy of dismissing declaratory judgment counterclaims for invalidity every time a lower court finds non-infringement. The Court noted that "[a] party seeking a declaratory judgment of invalidity presents a claim independent of the patentee's charge of infringement." *Id.* As a result, the Court held that declaratory judgment counterclaims for invalidity needed to be analyzed on their own facts and not automatically dismissed pursuant to a *per se* rule.

Although the opinion in *Cardinal Chemical* includes the "scarecrow patent" sentence relied on by True Center, the Supreme Court did not purport to alter the test for justiciability of declaratory judgment claims of invalidity. This reality has been recognized by the Federal Circuit: "*Cardinal* does not revolutionize the justiciability of declaratory judgment actions attacking a patent's validity[.]" *Super Sack*, 57 F.3d at 1060; *see Institut Pasteur v. Simon*, 332 F. Supp. 2d 755, 758 (E.D. Pa. 2004) ("nothing in *Cardinal* 'undermines the Federal Circuit's decisions on declaratory justiciability at the trial court level'") (quoting *Super Sack*, 57 F.3d at 1060; alterations omitted). Plaintiffs must still satisfy the two-part test for justiciability set forth above, *see Super Sack*, 57 F.3d at 1058,

1 something True Center cannot do after K-Zell's covenant not to sue.

2 True Center argues that the 201 and 094 patents place a cloud of litigation over True
3 Center's business, that K-Zell is simply seeking, by its covenant, to avoid a determination
4 of its patents' validity, and that the covenant therefore does not eliminate the prospect of
5 real injury to True Center. The Federal Circuit has held, however, that such concerns do
6 not provide a sufficient basis for jurisdiction over a declaratory judgment claim of patent
7 invalidity. *See Teva Pharms.*, 395 F.3d at 1331-34. As *Teva Pharmaceuticals* explained,
8 only a reasonable apprehension of an imminent infringement suit gives rise to the kind of
9 controversy necessary to support jurisdiction over such a claim. *Id*.

10 The Court concludes that True Center's "scarecrow patent" argument, although
11 vigorously asserted, does not provide a basis for subject matter jurisdiction over its
12 invalidity claims. Applicable federal law makes clear that True Center must face an
13 imminent threat of an infringement suit based on its present activity. Because K-Zell's
14 covenant not to sue has eliminated that threat, the invalidity claims must be dismissed.

15 **C.     True Center's Supplemental Memorandum Regarding Jurisdiction.**

16 Following the Court's announcement of its decision from the bench, True Center
17 filed a supplemental memorandum on subject matter jurisdiction and K-Zell filed a
18 response. Docs. ##186, 188. True Center contends that the Court should look beyond the
19 traditional two-part jurisdictional test for declaratory judgment claims of invalidity and
20 construe its causes of action as "inventorship disputes" under 35 U.S.C. § 256. Doc. #186
21 at 2-5 (citing *Fina Oil Chem. Co. v. Ewen*, 123 F.3d 1466 (Fed. Cir. 1997); *Chou v. Univ. of*
22 *Chicago*, 254 F.3d 1347 (Fed. Cir. 2001)).[1] K-Zell argues that True Center's reliance on *Fina*

23 ----

24 [1]Section 256 provides, in pertinent part:
25 Whenever through error a person is named in an issued patent as the
   inventor, or through error an inventor is not named in an issued patent and
26 such error arose without any deceptive intention on his part, the Director
   may, on application of all parties and assignees, with proof of facts and such
27 other requirements as may be imposed, issue a certificate correcting such
28 error.

- 7 -

*Oil* and *Chou* is misplaced because those cases involved claims to correct or affirm inventorship under § 256, not claims of patent invalidity. Doc. #188 at 1-5. K-Zell further argues that because True Center seeks a declaration that the 201 and 094 patents are invalid under 35 U.S.C. §§ 102 and 103, the Federal Circuit's traditional two-part jurisdictional test applies. *Id.* at 3-5 (citing *Institut Pasteur*, 332 F. Supp. 2d at 758; *BP Chems., Ltd. v. Union Carbide Corp.*, 4 F.3d 975 (Fed. Cir. 1993)).

The Court agrees with K-Zell. In *Chou*, a graduate student sued her former professor and the university she attended for correction of inventorship under § 256. 254 F.3d at 1353. The Federal Circuit held that although the plaintiff was obligated to assign her inventions to the university, she nonetheless had standing to sue for correction of inventorship under § 256. The holding in *Chou* has no application to this case because True Center has not brought a claim for correction of inventorship under § 256. Docs. ##1, 57, 70. Moreover, Clay Puett, the person True Center alleges is the true inventor of the starting gates depicted in the 201 and 094 patents, is not a party to this action.

In *Fina Oil*, the plaintiff sought a declaration that the inventors were properly named in the patent at issue in accordance with 35 U.S.C. § 116. 123 F.3d at 1470. Applying the well-pleaded complaint rule, the Federal Circuit looked to the corresponding suit that the defendant would have brought, i.e., an action for correction of inventorship under 35 U.S.C. § 256. *Id.* The Federal Circuit found that an actual controversy existed because the plaintiff owned the patent at issue and had a reasonable apprehension that the defendant would bring a § 256 action. Because those facts are not present in this case, *Fina Oil* has no bearing on the Court's ruling that it lacks jurisdiction over True Center's invalidity claims. *See Institut Pasteur*, 332 F. Supp. 2d at 758 ("*Fina Oil* does not alter the *BP Chemicals* two-pronged test for determining whether an actual controversy exists in cases involving a declaratory judgment of patent invalidity."); *Teva Pharms.*, 395 F.3d at 1335-56 (stating that the holding in *Fina Oil* follows the Federal Circuit's traditional two-part jurisdictional test and "in no way suggests that the traditional test does not address the Article III requirement of an actual case or controversy").

True Center also argues that K-Zell's last-minute issuance of a covenant not to sue is a flagrant abuse of the judicial system and that the dismissal of this action on the second day of trial is unfair. Doc. #186 at 8-9. The jurisdictional inquiry, however, focuses on judicial power, not fairness. *See Hercules, Inc. v. United States*, 516 U.S. 417, 430 (1996) ("[W]e are constrained by our limited jurisdiction and may not entertain claims 'based merely on equitable considerations.'") (citation omitted). What is more, dismissal of the remaining claims in this case is not unfair. This is not a case where the plaintiff sought from the start to establish the invalidity of patents and invested substantial resources in that effort only to have the rug pulled out from under it by a last-minute covenant not to sue. True Center has been largely unsuccessful in its claims against K-Zell and others and has sought repeatedly to expand and modify those claims throughout the course of this litigation. True Center commenced this action before the 201 and 094 patents were even issued, alleging federal false advertising and trademark violations and a host of state law claims against K-Zell and others. *See* Doc. #1. True Center ultimately lost all of these claims. Nearly a year after filing suit, True Center unsuccessfully sought to expand the case by moving to add several more state law claims against defendants.[2] *See* Docs. ##33, 56. True Center eventually was permitted to add declaratory judgment claims concerning the alleged invalidity of the K-Zell patents, but these claims were added only after much litigation on other claims.

All of the claims in this case have come from True Center. K-Zell has litigated and overcome the vast majority of claims asserted by True Center. K-Zell has never counter-claimed for infringement of the 201 and 094 patents. K-Zell instead has argued from the inception of the invalidity claims that True Center does not face and has never faced a threat of infringement litigation. The fact that K-Zell made this fact unmistakably clear by

---

[2] True Center moved to amend the complaint for a third time more than three years after it filed suit and more than three months after the Court granted summary judgment in defendants' favor on all but the declaratory judgment claims. *See* Docs. ##139, 165. The Court denied this attempt by True Center to expand the case yet again.

1 issuing a pre-trial covenant not to sue does not strike the Court as unfair.

**D.     Attorneys' Fees.**

True Center's declaratory judgment claims include a prayer for relief seeking attorneys' fees under 35 U.S.C. § 285, a provision that permits courts to award fees to prevailing parties in "exceptional" patent cases. True Center has not asserted a separate claim for attorneys' fees, but merely includes a request for such fees in its prayer for relief on the declaratory judgment claims.

True Center's prayer for attorneys' fees does not provide an independent basis for jurisdiction. *See Sony Elecs., Inc. v. Soundview Techs., Inc.*, 375 F. Supp. 99, 101 (D. Conn. 2005). Like the declaratory judgment claimant in *Sony*, True Center has not asserted a separate claim for fees and does not contend that K-Zell initiated an infringement action in bad faith (as noted above, K-Zell has initiated no infringement action against True Center). True Center's fee request is simply a remedy sought for the declaratory judgment claims over which the Court has no subject matter jurisdiction. *See id.* ("[T]he attorneys' fees issue that Sharp seeks to litigate here is itself based on the substantial patent question of Soundview's inequitable conduct, as to which this Court has determined that no actual controversy exists."); *Tunik v. Merit Sys. Protection Bd.*, 407 F.3d 1326, 1331 (Fed. Cir. 2005) (stating that "'an interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim'") (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990)).

Moreover, even if the Court possessed jurisdiction to address True Center's fee request, it would conclude that True Center is not a "prevailing party" within the meaning of § 285. In addition to the fact that True Center has been unsuccessful on most of its claims in this case, the case is being dismissed for lack of subject matter jurisdiction. No judicial relief has been accorded True Center on any of its claims. "'[T]o be a prevailing party, one must receive at least some relief on the merits, which alters . . . the legal relationships of the parties.'" *In re Columbia Univ. Patent Litig.*, 343 F. Supp. 2d 35, 49 (D. Mass. 2004) (quoting *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1320 (Fed. Cir.

2004)). Because True Center has received no such relief, it is not a prevailing party within the meaning of the attorneys' fee statute. As the district court in *Columbia University* explained:

> While Columbia's covenant not to sue is a form of voluntary conduct that accomplishes the major part of what the plaintiffs sought to achieve in these lawsuits, they have received no relief from the court on the merits of their claims. They are, therefore, not prevailing parties for the purposes of § 285.

*Id.* (citing *Inland Steel*).

### E. Conclusion.

The covenant not to sue implemented by K-Zell, which the Court finds to be binding on K-Zell, eliminates any reasonable apprehension of an imminent infringement suit against True Center on the basis of True Center's present activity. The covenant therefore eliminates both requirements for subject matter jurisdiction over True Center's remaining declaratory judgment claims and this case must be dismissed.

**IT IS ORDERED:**

1. The remaining eleventh and twelfth causes of action of the second supplemental complaint (Doc. #70) are **dismissed** for lack of jurisdiction.
2. All pending motions are **denied** as moot.
3. The Clerk of Court shall **terminate** this action.

DATED this 16th day of November, 2005.

David G. Campbell
United States District Judge